MATTER OF F—

In VISA PETITION Proceedings

A-12027843

*Decided by Board May 5, 1961*

Marriage—Effect of annulment—Validity of marriage contracted in Belgium prior to annulment of preexisting marriage—Adopted child—Adoption proceedings by wife in maiden name without participation of husband.

(1) Where beneficiary did not obtain annulment of preexisting marriage until three years after ceremonial marriage to petitioner in Belgium in 1955, general rules relating to effect of nullity decrees will be applied, absent evidence that the law of Belgium is otherwise, to uphold validity of beneficiary's marriage to petitioner.

(2) Notwithstanding that adoption proceedings under Belgian law were solely by wife in her maiden name, minor beneficiary qualifies as "adopted child" of petitioner/husband upon showing made that *bona fide* family relationship has existed since adoption and that requirements as to custody and residence have been satisfied.

**BEFORE THE BOARD**

**DISCUSSION:** The case comes forward on appeal from the order of the District Director, Newark District, dated December 9, 1960, denying the visa petition filed in behalf of the adult beneficiary as the wife of the petitioner for the reason that the validity of the petitioner's marriage on September 22, 1958 (*sic*) at Liege, Belgium, has not been satisfactorily established, although not established as invalid by the Belgian authorities, inasmuch as the wife's prior marriage on June 3, 1946, to M—S— was not terminated until the annulment granted June 6, 1958, at Aachen, Germany; and as to the minor beneficiary, for the reason that the legal relationship of A—R—Z— to petitioner of either adopted child or stepchild has also not been satisfactorily established as her adoption February 3, 1956, at Liege, Belgium, was solely by the wife under her maiden name, although shown to be the petitioner's wife, and the petitioner was not a party to the adoption proceedings inasmuch as he was under the age required by Belgian law. This confusing statement of the grounds for denial is not clarified by any supporting memorandum, although it is obvious that complex legal questions are involved.

275

The petitioner, a native of the Union of Soviet Socialist Republics, 39 years old, male, is a lawful permanent resident alien, having been admitted for permanent residence in the United States on March 23, 1960. He seeks preference status under section 203(a)(3) of the Immigration and Nationality Act on behalf of his wife, a native and last a citizen of the U.S.S.R., 44 years of age. He also seeks third preference status on behalf of the minor beneficiary, who is a native and citizen of Belgium, six years of age, as his adopted daughter.

We shall deal first with the case of the wife. The petitioner has established a ceremonial marriage to the beneficiary on September 22, 1955, at Liege, Belgium. The petitioner was married but one time and his wife was married twice prior to her marriage to the petitioner. The beneficiary was first married in Germany on June 3, 1946, and this marriage was annulled by the decree of the District Court at Aachen, Germany, on June 6, 1958. The circumstances surrounding this marriage are set forth in the brief filed in behalf of the petitioner. It is alleged that the beneficiary's family was persecuted by the Soviets and that she was taken as an "Ostarbeiter" to Germany. In 1946, when forced repatriation was still the general practice in Germany, she was under the threat of being forcibly returned to the U.S.S.R. She was given to understand by an UNRRA worker that her only salvation would be to marry a non-Russian person and for this reason she married an old man named S— of Latvian nationality. The beneficiary never lived with her first husband and has never heard of him since their wedding, but by so marrying this person she escaped repatriation. It is alleged that the beneficiary considered her marriage fictitious and that it would never be considered a legal, binding marriage. Subsequently, she went to Belgium where she married on June 15, 1948, this marriage being terminated on October 15, 1954, by a divorce granted pursuant to Article 230 of the Civil Code of Belgium in the Court of Justice at Liege, Belgium. Her marriage to the petitioner took place in Belgium on September 22, 1955, after the termination of her second marriage but prior to the annulment of the beneficiary's 1946 marriage.

No consideration appears to have been given below to the circumstances surrounding the first marriage or to the legal consequence of a dissolution by an *annulment* (rather than a divorce) of the first marriage despite the fact that a letter has been submitted under the seal and signature of the Royal Public Prosecutor at Liege, Belgium, dated October 21, 1959, to the effect that the marriage contracted by the parties on September 22, 1955, was regarded as valid and that no proceedings were ever instituted or contemplated against the beneficiary. It is to be noted that the petitioner

did not come to the United States until March 23, 1960, and presumably relied upon this letter to establish the validity of his marriage to the beneficiary for it would have been no problem for the petitioner to have remarried after the decree of annulment had they been so advised since both parties were then residing in Belgium. The record contains no indication that the petitioner was questioned about the marriage.

There is an important difference between divorce and annulment. A decree of divorce dissolves the marriage and relieves the parties of their obligations as husband and wife; but it recognizes that the relation had a lawful existence, of which the consequences continue, even though the relationship has terminated. This a nullity decree does not do. It is granted for causes antedating the marriage and its legal effect is to say that the marriage never existed.[1] A statute may make an annulment operative from the time of the decree, so that the action becomes practically the same in effect as that for divorce. However, since no specific foreign statute in this regard has been cited, it will be assumed that the general rule set forth above prevailing in this country applies. The second letter from the Royal Public Prosecutor at Liege, dated September 30, 1960, confirms this assumption, because he comments that the annulment of the first marriage by the tribunal at Aix-la-Chapelle (Aachen) makes inopportune any further comment on the invalidity of the marriage of September 22, 1955.

In view of the circumstances surrounding the beneficiary's first marriage, i.e., that it was a fictitious marriage entered into for the purpose of escaping repatriation, the allegation that the beneficiary has never lived with the person she married and has never heard of him since the time of the so-called wedding, together with the presumption of validity attached to the present ceremonial marriage and the effect of the decree of nullity entered as to the first marriage, it is concluded that the petitioner has satisfactorily established the validity of his present marriage to the beneficiary. Accordingly, the visa petition will be approved for third preference quota on behalf of the adult beneficiary as the wife of the petitioner.

The petition for third preference status on behalf of the second beneficiary has been denied by the District Director on the ground that the legal relationship of the minor beneficiary to the petitioner as either his adopted child or stepchild has also not been satisfactorily established as her adoption on February 3, 1956, at Liege, Belgium, was solely by his wife under her maiden name (although she was shown to be his wife) and he was not a party to

---

[1] Goodrich, *Conflict of Laws* (1949), p. 417; Madden, *On Persons and Domestic Relations* (1931), p. 203.

the adoption proceeding inasmuch as he was under the age required by Belgian law. Petitioner's brief points out that the letter of Joseph Schmit, an attorney at Liege, Belgium, dated September 1, 1960, and certified under the seal of the Lower Court, recites the judgment confirming the actual adoption rendered by the 4th Chamber of the Lower Court at Liege on December 24, 1955, upon petition of the wife; the child to bear the surname of the wife's maiden name; and that only the wife could adopt the child because at the time of adoption her husband had not yet reached the age of 35 years according to Article 344 of the Belgian Civil Code (law of March 22, 1940) and could not adopt the child; and that in accordance with Article 347 of the Code, only the name of the young woman adopting the child could be conferred on the adopted child. According to the letter of the Royal Public Prosecutor at Liege dated October 21, 1959, the actual adoption of the child by the wife of the petitioner is regarded as valid by the Royal Public Prosecutor.

The child has resided with her adoptive mother and the latter's husband, the petitioner, since the date of adoption on December 24, 1955, when the child was a little over one year of age. The adoption appears to comply with the requirements of section 101(b)(1)(E) of the Immigration and Nationality Act, in that, the adoption occurred when the child was under 14 years of age and she has been in the legal custody of, and has resided with, the adoptive parent or parents for more than two years. The petitioner described the beneficiary as his adopted daughter and the brief describes him as a loving and devoted father. There is no evidence challenging the *bona fides* of the family relationship involved.

It is believed that the case falls within the scope of the Attorney General's decision in *Matter of Y—K—W—*, 9—176 (Feb. 28, 1961), which specifically overrules *Matter of U—F—L—*, 8—151, upon which the District Director's denial appears to be based. The child beneficiary in this case was adopted by the wife during the marriage; the husband who was prevented from participating in the adoption by a technicality has consented to the adoption and supported the child who has resided with both the adoptive mother and her husband, the petitioner, and has been in the legal custody of both for more than two years past.

The following pertinent extracts from the Attorney General's decision in *Matter of Y—K—W—*, *supra*, reveal the present administrative view in a *bona fide* adoptive family situation such as exists in this case:

Once the remedial purpose of preserving, rather than interrupting, *bona fide* family relationships . . . is recognized, the reasoning in *Ng Fun Yin* v. *Esperdy* [187 F. Supp. 51] appears to be compelling. . . .

. . . In this case there has been no challenge to the *bona fides* of the family relationships involved. The validity of the marriage of the parents and the

adoption of the child are unquestioned. Nor is any question raised as to whether the child was in the legal custody of and resided with the wife for the required period. There is, therefore, no evidence of fraud. . . .

This latest Attorney General decision stresses the remedial and humanitarian purposes of section 101(b)(1)(E). Under the circumstances present in the instant case, the beneficiary qualifies as an adopted child.

ORDER: It is ordered that the appeal be sustained and that both beneficiaries be found eligbile for third preference quota status.